**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**MICHAEL PRINCE HODGES,**

        **Plaintiff,**

    **v.**                                    **Civil Action No. 3:23cv271**

**HENRICO POLICE DEPARTMENT,**
*et al.*,

        **Defendants.**

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court on Defendants Alan Thomas Richardson, Bradley Randall Hill, and the Henrico County Police Division's ("HCPD"), sued as the "Henrico Police Department"[1], (collectively, the "Defendants") Motion to Dismiss (the "Motion").[2]  (ECF No. 14.)  Plaintiff Michael Prince Hodges, proceeding *pro se*, responded to the Motion.  (ECF No. 16.)  The Defendants did not reply, and the time to do so has expired.  *See* E.D. Va. Loc. Civ. R. 7(F)(1).[3]

The matter is ripe for disposition.  The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process.

---

[1] This Opinion refers to the Henrico Police Department entity as "HCPD" throughout.

[2] Defendants included a notice meeting the requirements set forth in *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Civil Rule 7(K) (the "*Roseboro* Notice"). (ECF No. 14.)  The *Roseboro* Notice informed Mr. Hodges that he had twenty-one (21) days to respond and that failure to respond could result in dismissal of his claims.  (ECF No. 14, at 1–2.)

[3] Local Civil Rule 7(F)(1) states, in pertinent part:  "[T]he moving party may file a reply brief within six (6) calendar days after the service of the opposing party's response brief."  E.D. Va. Loc. Civ. R. 7(F)(1).

For the reasons stated below, the Court will grant the Motion.  (ECF No. 14.)  The Court will dismiss the Amended Complaint in its entirety.  (ECF No. 5.)

## I.  Factual and Procedural Background

### A.      Factual Background[4]

Mr. Hodges brings this action against Officer Bradley Hill, Sergeant Alan Richardson, and the HCPD.  (ECF No. 5, at 1.)  In his Amended Complaint, Mr. Hodges asserts that "[o]n the night of February 26, 2023", he was "stopped by Officer . . . Hill" who demanded that Mr. Hodges provide "a Virginia . . . commercial [driver's] license and registration."  (ECF No. 5, at 6.)  Mr. Hodges "gave Officer . . . Hill [an] International Foreign Driver[']s License."  (ECF No. 5, at 6.)  Officer Hill called Sergeant Richardson, who "gave the word . . . [to] confiscate [Mr. Hodges's license] plates[.]"  (ECF No. 5, at 7.)  Officer Hill "denied" Mr. Hodges's request for Officer Hill's "bonding information[.]"  (ECF No. 5, at 7.)  Officer Hill "then wrote 3 traffic tickets and left with [Mr. Hodges's] claimed private property which are plates held in trust."  (ECF No. 5, at 8.)  In a subsequent FOIA request, Officer Hill "admitted . . . that he dealt with [Mr. Hodges's] automobile before."  (ECF No. 5, at 8.)  Mr. Hodges notes that "[a]fter the court hearing the judge dismissed the complaints held in the HENRICO GENERAL DISTRICT COURT[.]"  (ECF No. 5, at 8.)[5]  Mr. Hodges asserts that the Defendants "still have [his] property in possession causing [him] financial harm to this day since [he is] unable to travel."  (ECF No. 5, at 8.)

---

[4] In considering a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court will accept a plaintiff's allegations as true and view the facts in a light most favorable to the plaintiff.  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

[5] Mr. Hodges does not specify the date on which this court hearing occurred.

2

In his Amended Complaint, Mr. Hodges cites to a variety of provisions from the United States Code—18 U.S.C. §§ 241–242 and 42 U.S.C. §§ 1983, 1985, and 1986—as well as to the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. (ECF No. 5, at 3.) He also appears to assert a variety of state law claims, such as "BREACH OF TRUST[,] [misuse] of private property without consent, fraud, [i]dentity theft[,] [t]heft of Trust property[] . . . , [misuse] of the name MICHAEL PRINCE HODGES . . . , [f]raudulent contracting under duress, identify theft" and "deprivation of rights according to the Virginia Constitution Article 1 section 16." (ECF No. 5, at 4, 6.)

**B.**    **Procedural Background**

On April 25, 2023, Mr. Hodges moved for leave to file *in forma pauperis*, (ECF No. 1), which the Court granted on May 5, 2023, (ECF No. 2). In the same Order granting Mr. Hodges *in forma pauperis* status, the Court observed that Mr. Hodges's claim was facially insufficient and ordered Mr. Hodges to show cause why his action should not be dismissed by filing an Amended Complaint. (ECF No. 2, at 3.) On May 11, 2023, Mr. Hodges filed an Amended Complaint, (ECF No. 5), and on May 26, 2023, the Clerk issued summonses to Defendants, (ECF No. 7). On June 21, 2023, the Defendants moved for an extension of time to file their responsive pleadings, (ECF No. 9), which the Court granted, (ECF No. 10).

On June 28, 2023, Mr. Hodges filed Causes of Action (Part I) and Causes of Action (Part II) (collectively, the "Causes of Action"). (ECF Nos. 11, 12.) On July 6, 2023, the Court issued an Order notifying Mr. Hodges that his Amended Complaint "must come in the form of a fully integrated document", that the Court "will disregard [his] Causes of Action", and that he must "file a motion requesting leave" if he wished to file a Second Amended Complaint. (ECF No. 13, at 1–2.) To date, Mr. Hodges has not moved for leave to file a Second Amended

3

Complaint, and the Court continues to disregard his Causes of Action and exhibits contained therein.[6]  (ECF Nos. 11, 12.)

On July 11, 2023, the Defendants filed a Motion to Dismiss.  (ECF No. 14.)  Mr. Hodges responded to the Motion, (ECF No. 16), and the Defendants did not reply.  Their deadline to do so has expired.  *See* E.D. Va. Loc. Civ. R. 7(F)(1).

## II.  Standard of Review

### A.    Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2)[7] permits dismissal of an action where the court lacks personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  "'An entity that does not have capacity to be sued is outside the personal jurisdiction of the court.'"  *McMillan v. Vaught*, No. 1:19-CV-591

---

[6] While acknowledging that the exhibits are improperly filed pursuant to Federal Rule of Civil Procedure 15, Defendants nonetheless cite to these exhibits in their Motion to Dismiss "as necessary . . . to elucidate the Plaintiff's claims."  (ECF No. 15, at 1–2.)  As basis for this reliance, Defendants state that "[p]resumably, the Plaintiff believes that they are integral to his allegations and does not dispute their authenticity."  (ECF No. 15, at 1–2 (citing *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016)).)

Because the Court has advised Mr. Hodges that it will not consider the exhibits contained in his Causes of Action, (ECF No. 13, at 1), and because the Court can properly evaluate the Motion to Dismiss without considering them, the Court declines to do so.  *See Goines*, 822 F.3d at 166 (stating that a court "*may* consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity" (emphasis added)).

Nonetheless, the Court has reviewed the Causes of Action and notes that even if the Court were to consider them in this analysis, the outcome would not change.

[7] Rule 12(b)(2) states, in pertinent part:

(b) HOW TO PRESENT DEFENSES. . . . [A] party may assert the following defenses by motion:

          *       *       *

        (2) lack of personal jurisdiction[.]

Fed. R. Civ. P. 12(b)(2).

(LO), 2019 WL 8223613, at *1 (E.D. Va. Sept. 10, 2019) (quoting *Henderson v. Fairfax-Falls Church Commnity Servs. Bd.*, No. 1:18-CV-825 (CMH), 2018 WL 6037522, at *2 (E.D. Va. Nov. 15, 2018), *aff'd sub nom. Henderson v. Fairfax-Falls Church Cmty. Servs. Bd.*, 771 F. App'x 205 (4th Cir. 2019)).

"When a 'district court addresses the question of personal jurisdiction on the basis of motion papers, supporting legal memoranda, and the allegations in the complaint, the plaintiff bears the burden [of] making a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge.'" *Id.* (quoting *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009)).

### B.   <u>Rule 12(b)(6)</u>

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

5

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193 (citation omitted). The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (a court deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *E.I. Du Pont de Nemours and Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011))). This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citing *Alt. Energy, Inc. v.*

6

*St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Gasner v. Cty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)).

    **C.**    <u>**Obligation to Construe *Pro Se* Pleadings Liberally**</u>

    Because Mr. Hodges proceeds *pro se* in this case, the Court liberally construes his filings. *See Erickson v. Pardus*, 551 U.S. 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (internal quotation marks and citations omitted)). Nonetheless, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts that set forth a claim cognizable in a federal district court. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (outlining pleading requirements under Federal Rule of Civil Procedure 8 for "all civil actions"). A *pro se* plaintiff litigant must allege facts sufficient to state a cause of action. *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999) (citation omitted). The Court cannot act as a *pro se* litigant's "advocate and develop, *sua sponte*, statutory and constitutional claims that the [litigant] failed to clearly raise on the face of [the] complaint." *Newkirk v. Cir. Ct. of Hampton*, No. 3:14-CV-372 (HEH), 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014) (citations omitted).

<u>**III.  Analysis**</u>

    **A.**    <u>**The Henrico County Police Division is Not an Entity Capable of Being Sued**</u>

    Where a defendant is not an individual or a corporation, capacity to sue and be sued is determined by state law. Fed. R. Civ. P. 17(b)(3).[8] "'In Virginia, an operating division of a

---

[8] Rule 17 states, in pertinent part:

    (b) CAPACITY TO SUE OR BE SUED. Capacity to sue or be sued is determined as follows:

governmental entity cannot be sued unless the legislature has vested the operating division with the capacity to be sued.'" *McMillan v. Vaught*, No. 1:10-CV-591 (LO), 2019 WL 8223613, at *1 (E.D. Va. Sept. 10, 2019) (quoting *Muniz v. Fairfax Cnty. Police Dep't*, No. 1:05-CV-466 (JCC), 2005 WL 1838326 (E.D. Va. Aug. 2, 2005) (citing *Davis v. City of Portsmouth*, 579 F. Supp. 1205, 1210 (E.D. Va. 1983), *aff'd* 742 F.2d 1448 (4th Cir. 1984))). Mr. Hodges "does not clearly assert any basis of liability against H[C]PD." (ECF No. 15, at 5.) Mr. Hodges has not asserted that HCPD is statutorily vested with capacity to be sued, and courts have previously dismissed HCPD as an "improper party" because HCPD "is not capable of being sued." *Lucas v. Henrico Cnty. Public School Bd.*, 3:18-CV-402 (HEH), 2019 WL 5791343, at *3 (E.D. Va. Nov. 6, 2019). Because Mr. Hodges has failed to make a showing of this Court's jurisdiction over the HCPD, all claims against the HCPD will be dismissed without prejudice pursuant to Rule 12(b)(2).[9] *See id.*

\* \* \*

(3) for all other parties, by the law of the state where the court is located . . . .

Fed. R. Civ. P. 17(b)(3).

[9] As other courts have noted,

To the extent the claims against the [HCPD] can be read to be claims against [Henrico] County, they fail to state a claim. Local governments can be liable under 42 U.S.C. § 1983 for the local government's own actions, not those of employees. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 692 (1978)). The "Plaintiff must show that the [County] deprived him of a constitutional right "through an official policy or custom." *Moody v. City of Newport News Va.*, 93 F. Supp. 3d 516, 529 (E.D. Va. 2015) (quoting *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003)). Plaintiff has not alleged that any of the complained-of acts were made pursuant to any official policy or custom, or pursuant to the County's failure to properly train its officers, and thus failed to state a viable § 1983 claim under *Monell*.

8

**B.** **Officer Hill and Sergeant Richardson Have Qualified Immunity with Respect to Mr. Hodges's Section 1983 Claims**

Pursuant to 42 U.S.C. § 1983, Mr. Hodges first asserts that Officer Hill violated his

Fourth Amendment[10] rights by detaining him, asking for his license, and confiscating his license

plates.[11]  (ECF No. 5, at 4, 6, 10.)  Second, Mr. Hodges avers that Sergeant Richardson likewise

violated his Fourth Amendment rights by authorizing the seizure of the plates.  (ECF No. 5, at

4, 6.)  Third, Mr. Hodges states that all Defendants violated and continue to violate his Fifth

Amendment rights due to their failure to provide just compensation for the confiscation of his

---

*McMillan*, 2019 WL 8223613, at *1 n.1 (third brackets in original).  Here, Mr. Hodges alleges that Officer Hill acted in contravention of HCPD policy or custom.  (*See* ECF No. 5, at 6 (asserting that "Officer [Hill] violat[ed] his own oath and police policy on dealing with foreign nationals").)  Even construing *pro se* pleadings liberally, this is an insufficient basis for a *Monell* claim.  *See McMillan*, 2019 WL 8223613, at *1 n.1.

[10] The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. am. IV.

[11] To the extent that Mr. Hodges's § 1983 claims are premised on the Fourteenth Amendment's Due Process Clause, the claims must be dismissed because the claims are governed by the Fourth Amendment (incorporated in the Fourteenth Amendment).  *Emesowum v. Arlington Cnty.*, No. 1:20-CV-113 (TSE), 2020 WL 305037, at *4 (E.D. Va. June 5, 2020) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)).  "[T]he Fourth Amendment provides an explicit textual source of constitutional protection against [unreasonable seizures and arrests] and define[s] the process that is due for seizures of persons or property[.]" *Id.* (quoting *Graham*, 490 U.S. at 395) (internal quotation marks omitted) (second and third brackets in original).  Thus, "the Fourth Amendment, and not the more generalized notion of due process in the Fourteenth Amendment, provides the actionable ground for relief where, as here, a police officer is alleged to have . . . unlawfully seized plaintiff and plaintiff's property." *Id.* (dismissing with prejudice "any of plaintiff's § 1983 claims premised on the Fifth Amendment Due Process Clause and the Fourteenth Amendment Due Process Clause").

license plates or to return the license plates. (ECF No. 5, at 4, 10–11.) Finally, Mr. Hodges asserts that Officer Hill "demanded [that Mr. Hodges] provide . . . a Virginia . . . commercial [driver's] license and registration which is also a 5th Amendment violation." (ECF No. 5, at 6, 10.)

Because Mr. Hodges does not allege facts to support a finding of illegal conduct, and because Officer Hill and Sergeant Richarson's (collectively, the "officers") conduct did not violate a clearly established right, qualified immunity applies, meaning that the Motion to Dismiss will be granted in full.

### 1.   **Legal Standard:  Qualified Immunity**

When a plaintiff sues a government official in their individual capacity, "qualified immunity protects them 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sharpe v. Winterville Police Dep't*, 59 F.4th 674, 682–83 (4th Cir. 2023) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  The Fourth Circuit has held that when determining whether qualified immunity applies, a court "ask[s] both 'whether a constitutional violation occurred' and 'whether the right violated was clearly established' at the time of the official's conduct." *Id.* at 683 (quoting *Melgar ex rel. Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010)).  Courts have discretion to choose which of these questions to consider first. *Hunsberger v. Wood*, 570 F.3d 546, 552 (4th Cir. 2009) (citation omitted); *Pearson*, 555 U.S. at 235–36 (federal judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

When considering the second question, the right can be clearly established by "cases of controlling authority in this jurisdiction" or "by a consensus of persuasive authority from other

jurisdictions." *Sharpe*, 59 F.4th at 683 (citing *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 280 (4th Cir. 2004)). Regardless of where the sources originate, they must "'place[] the statutory or constitutional question beyond debate.'" *Id.* (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam)). Establishing the right "does not require 'a case directly on point,'" *id.* (quoting *Kisela*, 138 S. Ct. at 1152), but "the right's contours must be 'sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right,'" *id.* (quoting *Cannon v. Vill. of Bald Head Island*, 891 F.3d 489, 497 (4th Cir. 2018)). Qualified immunity "thereby requires the dismissal of suits against 'all but the plainly incompetent or those who knowingly violate the law.'" *Hulbert v. Pope*, 70 F.4th 726, 732 (4th Cir. 2023) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

### 2.    Mr. Hodges Does Not Allege Facts to Support a Finding of Illegal Conduct

Mr. Hodges does not allege sufficient facts to support a finding that a constitutional violation occurred due to the traffic stop, the request for identification, the confiscation of the "private plates", or the declination to provide Mr. Hodges's with Officer Hill's "bonding information." Indeed, Mr. Hodges's Amended Complaint describes a routine traffic stop in which a law enforcement officer stopped a vehicle after observing a traffic infraction, asked for the license and registration that vehicle operators are required by law to produce to law enforcement, and confiscated the invalid plates that initiated the traffic stop. Also, even if Mr. Hodges had somehow alleged a constitutional violation in this stop, the officers' conduct did not violate any clearly established right. Accordingly, qualified immunity applies to Mr. Hodges's federal claims against Officer Hill and Sergeant Richardson.

a.    **Mr. Hodges Does Not Allege Facts to Support that the Traffic Stop Was Illegal**

To satisfy the Fourth Amendment, a traffic stop "'must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct.'" *United States v. Wilson*, 205 F.3d 720, 723 (4th Cir. 2000) (en banc) (quoting *United States v. Hassan El*, 5 F.3d 726, 729 (4th Cir. 1993)).  Probable cause to believe the suspect committed a traffic violation is sufficient to conduct a traffic stop, no matter how minor the offense.  *See Hassan El*, 5 F.3d at 730; *see also Whren v. United States*, 517 U.S. 806, 810 (1996).  "Moreover, an officer who observes a traffic offense may have probable cause even where he [or she] has additional motives for the stop." *United States v. Williams*, 740 F.3d 308, 312 (4th Cir. 2014); *see also Whren*, 517 U.S. at 813 ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").  In Virginia, a failure to display license plates properly provides probable cause for a traffic stop.  *See, e.g., Nazario v. Gutierrez*, No. 2:21-CV-169 (RCY), 2022 WL 3213538, at *4 (E.D. Va. Aug. 9, 2022) (citing Va. Code Ann. §§ 46.2-715, -716) (concluding that "the Officers did have probable cause to execute a traffic stop for failure to display a license plate" where "the rear license plate was not in the correct position and was not visible").  A failure to display any valid license plates at all likewise provides probable cause for a traffic stop because this, too, violates Virginia law.  *See* Va. Code Ann. § 46.2-711 (2023).[12]

---

[12] Virginia Code § 46.2-711 states, in pertinent part: "No vehicles shall be operated on the highways in the Commonwealth without displaying the license plates required by this chapter." Va. Code Ann. § 46.2-711(F) (2023).

As used in this title, "highway" means

the entire width between the boundary lines of every way or place open to the use of the public for purposes of vehicular travel in the Commonwealth, including the streets and alleys, and, for law-enforcement purposes, (i) the entire width between the boundary lines of all private roads or private streets that have been specifically

Mr. Hodges asserts that he "was wrongfully stopped" but does not provide a clear factual basis by which this Court could discern whether the stop was indeed wrongful. (*See* ECF No. 5, at 6.) He characterizes the traffic stop as "[p]retextual . . . without a crime committed" and with no "victim,[ ]injury or damage to a person[']s property", again without explaining what allegedly made the stop pretextual. (ECF No. 5, at 6.) Mr. Hodges avers that Officer Hill had "dealt with [his] automobile [on previous occasions] which displays [Officer Hill's] prior motives of stalking [Mr. Hodges's] private property." (ECF No. 5, at 8.)

Even construing Mr. Hodges's *pro se* Amended Complaint liberally, the allegation that Officer Hill had previously stopped Mr. Hodges's vehicle does not suffice to establish that this stop was "wrongful" or "pretextual", particularly where Mr. Hodges himself presents facts suggesting that he failed to properly display valid Virginia license plates on his vehicle on the night in question. *See Williams*, 740 F.3d at 312 ("[A]n officer who observes a traffic offense may have probable cause even where he has additional motives for the stop."). Mr. Hodges's Amended Complaint suggests that the "private plates" law enforcement confiscated during the traffic stop were either "private plates of the Trust MPH Foundation recorded in the Pima

---

designated "highways" by an ordinance adopted by the governing body of the county, city, or town in which such private roads or streets are located and (ii) the entire width between the boundary lines of every way or place used for purposes of vehicular travel on any property owned, leased, or controlled by the United States government and located in the Commonwealth.

Va. Code Ann. § 46.2-100 (2023).

Section 46.2-712 states, in pertinent part: "Every license plate shall display the registration number assigned to the motor vehicle . . . , the name of the Commonwealth . . . , and the year or the month and year . . . for which it is issued." Va. Code Ann. § 46.2-712 (2023). Although there are provisions outlining limited exemptions from this requirement, *see* Va. Code Ann. § 4.62-712(B)–(C) (2023), Mr. Hodges does not allege that any of those exemptions applied to his vehicle.

13

County Recorders [O]ffice" or possibly "for Tribal purposes for means of travel registered with the FMCSA[13]" or perhaps both. (ECF No. 5, at 4.)

In his rebuttal, Mr. Hodges states that he is "a diplomat in the Malachian Empire under [his] own tribe in the tribal registry provided in the website here: Tribal Registry – the indigenous aboriginal market nation registry (malachianempire.world)." (ECF No. 16, at 1.) He adds that the HCPD was given advance notice of his status "according to the certified mailing documents of [his] status correction recorded in Georgia County Superior [C]ourt . . . ." (ECF No. 16, at 1.) Mr. Hodges does not articulate any legal basis under which the HCPD or this Court can recognize his self-proclaimed status. The Court sees none.

Regardless, none of these descriptions asserts that Mr. Hodges's plates were valid license plates *issued by the Commonwealth* as required by the law this Court must apply. *See* Va. Code §§ 46.2-711, -712 (2023). As such, even favorably reading Mr. Hodges's Complaint—and his explication of it—his assertions contravene any claim that he was acting in a law abiding manner at the time of the traffic stop.

This Court finds that Mr. Hodges has failed to allege that the traffic stop was unlawful.

### b.    Mr. Hodges Does Not Allege Facts to Support that the Request for Identification and Registration Was Illegal

During a "routine traffic stop", an officer may "'request a driver's license and vehicle registration, run a computer check, and issue a citation.'" *United States v. Branch*, 537 F.3d 328, 335 (4th Cir. 2008) (quoting *United States v. Foreman*, 369 F.3d 776, 781 (4th Cir. 2004)).

---

[13] The Federal Motor Carrier Safety Administration ("FMCSA") is "the lead federal government agency responsible for regulating and providing safety oversight of commercial motor vehicles." *Who We Are*, FMCSA, https://www.fmcsa.dot.gov/mission/who (last accessed Feb. 16, 2024).

Section 46.2-104[14] of the Virginia Code also states that operators of motor vehicles on Commonwealth roads must provide their license and registration to law enforcement officers upon request.

Mr. Hodges asserts that Officer Hill violated his rights by asking for his driver's license and registration and then writing "3 traffic tickets". (ECF No. 5, at 6, 8.) These activities constitute well-established elements of a "routine traffic stop", *Branch*, 537 F.3d at 335, and fail to state a claim upon which relief can be granted.[15]

### c.    Mr. Hodges Does Not Allege Facts to Support that the Confiscation of Mr. Hodges's Plates Was Illegal

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. am. IV.  In general, the Fourth Amendment requires that police obtain a warrant before seizing property. *See United States v. Rumley*, 588 F.3d 202, 205 (4th Cir. 2009).  However, under the plain view exception, a police officer may seize incriminating evidence without a warrant if "(1) the officer

---

[14] Section 46.2-104 states, in pertinent part:

> The owner or operator of any motor vehicle . . . shall stop on the signal of any law-enforcement officer who is in uniform or shows his badge or other sign of authority and shall, on the officer's request, exhibit his registration card, driver's license, learner's permit, or temporary driver's permit and write his name in the presence of the officer, if so required, for the purpose of establishing his identity.

> Every person licensed by the Department as a driver . . . who fails to carry his license or permit, and the registration card for the vehicle which he operates, is guilty of a traffic infraction and upon conviction punished by a fine of $10.

Va. Code Ann. § 46.2-104 (2023).

[15] Mr. Hodges also alleges that Officer Hill's refusal to accept his "International Foreign Driver[']s License" constituted "a violation of deprivation of rights according to the Virginia Constitution Article 1 section 16." (ECF No. 5, at 6.)  The Court declines to exercise supplemental jurisdiction over the state law claims for the reasons discussed in Part III.D., *infra*.

is lawfully in a place from which the object may be plainly viewed; (2) the officer has a lawful

right of access to the object itself; and (3) the object's incriminating character is immediately

apparent." *Id.* (quoting *United States v. Jackson*, 131 F.3d 1105, 1109 (4th Cir. 1997) (further

citations and internal quotation marks omitted).

Mr. Hodges asserts that Officer Hill called Sergeant Richardson, who "gave the word . . .

[to] confiscate [Mr. Hodges's license] plates[.]" (ECF No. 5, at 7.) Mr. Hodges alleges that after

writing three traffic tickets, Officer Hill "left with [Mr. Hodges's] claimed private property

which are plates held in trust." (ECF No. 5, at 8.)

These assertions do not state a claim because the plain view exception applies. *See* Va.

Code Ann. § 46.2-711 (2023). First, Officer Hill was "lawfully in a place from which the object

[could] be plainly viewed" because the plates were visible on the exterior of the car. *See*

*Rumley*, 588 F.3d at 205. Second, Officer Hill had "a lawful right of access" to the license

plates, which were located on the exterior of Mr. Hodges's vehicle. *See id.* Third, the licensing

plates' "incriminating character [was] readily apparent", *see id.*, because their very nature—so-

called "private plates" allegedly "registered with the Federal Motor Carrier Association 3997993

held in Trust", (ECF No. 5, at 7)—and common sense suffice to conclude that the plates were

invalid and thus evidence of Mr. Hodges's traffic infraction. Because the plain view exception

applies, even read liberally, Mr. Hodges does not allege facts to support his claim that law

enforcement's confiscation of his plates was illegal.[16]

---

[16] At other points, Mr. Hodges states a claim under the Fifth Amendment for the seizure
of the license plates. (ECF No. 5, at 3–4, 10–11.) The Takings Clause of the Fifth Amendment
states, in pertinent part, that "nor shall private property be taken for public use, without just
compensation." U.S. Const. am. V. However "[t]he government's seizure of property to enforce
criminal laws is a traditional exercise of the police power that does not constitute a 'public use'"
in the context of the Takings Clause. *AmeriSource Corp. v. U.S.*, 525 F.3d 1149, 1153 (Fed. Cir.
2008); *see also Emesowum v. Arlington Cnty.*, 1:20-CV-113 (TSE), 2020 WL 3050377, at *5

Mr. Hodges also asserts that although "[a]fter the [Henrico General District] [C]ourt hearing the judge dismissed the complaints", the Defendants "still have [his] property in possession causing [him] financial harm to this day since [he is] unable to travel." (ECF No. 5, at 8, 13.) However, Mr. Hodges does not allege that Defendants have refused to return the plates to him upon request. (*See* ECF No. 15, at 11 n.7.) At best, Mr. Hodges refers to placing the HCPD "on notice" via a "Certified United States Postage Mailing with Return Receipt" that "warn[ed] them if they were to violate [Mr. Hodges] or [his] property which they have agreed to it through signing the certified return receipt along with their acquiescence which is an agreement to [his] contract according to [his]schedule of fees for damages." (ECF No. 5, at 11.) As in Part III.B.2.a, *supra*, this assertion does not allege any cognizable claim under the Fifth Amendment or any other law this Court must apply.

### d.    Mr. Hodges Does Not Allege Facts to Support that the Failure to Provide Requested Information Was Illegal

Officer Hill "denied" Mr. Hodges's request for Officer Hill's "bonding information[.]" (ECF No. 5, at 7.) Mr. Hodges cannot prevail on this claim because he does not specify which right was purportedly violated. Mr. Hodges states that *Gainor v. Roberts*, 973 F.2d 1379 (8th Cir. 1992), provides that an individual "may verbally challenge the officer's actions and ask him for his [identification]". (ECF No. 5, at 9.) This appears to relate to his claim that he was entitled to Officer Hill's so-called "bonding information." (ECF No. 5, at 7, 9.) First, Mr. Hodges does not clarify what this "bonding information" is or why he is entitled to it. Moreover,

---

(E.D. Va. June 5, 2020) ("It is well-settled that the Fifth Amendment Takings Clause is not implicated when the government exercises its police power." (citing *Mugler v. Kansas*, 123 U.S. 623 (1887)). Mr. Hodges's Fifth Amendment claims fail because he does not assert that Officer Hill seized the plates for a public use rather than, as is apparent to this Court, as evidence in a criminal case under the government's police power. *See id.*

*Gainor* is inapposite, as it concerned the arrest of an individual who challenged the *officer's* right

to demand that the individual produce identification. *Id.* at 1385. *Gainor* does not state that an

officer is required to provide identification or information. *See generally id.* Mr. Hodges offers

no other authority to support the proposition that Officer Hill was required to provide him with

information, and this Court is aware of none.[17]

### 3. The Officers' Conduct Did Not Violate a Clearly Established Right

Although the Court concluded in Part III.B.2, *supra*, that Mr. Hodges did not establish

any violation of his rights, given Mr. Hodges's *pro se* status, the Court also addresses whether

Mr. Hodges raises precepts or court findings that the officers' actions were wrongful. He has

not. None of the cases Mr. Hodges cites in support of his arguments demonstrate that the

officers' conduct violated a clearly established right, and this Court sees no other cases that

would so demonstrate. Accordingly, qualified immunity applies to the officers' conduct.

First, Mr. Hodges cites *Whalen v. Roe*, 429 U.S. 589 (1977) and *Olmstead v. United

States*, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting), for the proposition that he has "the

right to be left [*sic*] alone". (ECF No. 5, at 9.) The "right to be let alone" necessitates that

"every . . . intrusion by the government upon the privacy of the individual" must be justified or

else it violates the Fourth Amendment. *See Olmstead*, 277 U.S. at 478 (Brandeis, J., dissenting)

---

[17] In his Reply, Mr. Hodges cites numerous additional cases and law dictionary entries for the first time in an apparent argument that "statu[t]es are not law", that "[t]he RIGHT TO TRAVEL is an unconditional personal right", and that "[t]hose who have a right to do something cannot be licensed for what they already have a right to do". (ECF No. 16, at 2–3.) The Court need not address this untimely argument. *See Touchcom, Inc. v. Bereskin & Parr*, 790 F. Supp. 2d 435, 446 (E.D. Va. 2011) (explaining "[t]ypically, courts will not consider an argument raised for the first time in a reply brief" because the "opposing party is prejudiced in its ability to respond to the argument") (citation and internal quotation marks omitted).

However, were the Court to address these assertions, it would find them frivolous and unpersuasive.

(emphasis added).  However, these cases acknowledge that the government may intrude upon the right when it has adequate justification to do so.  *See Whalen*, 429 U.S. at 598, 599 & n.25, 602 (upholding New York law mandating disclosure of certain drug prescriptions to the state as "a reasonable exercise of the state's broad police power" despite the intrusion on patients' "right to be let alone").

Traffic stops are a reasonable exercise of the state's broad police powers where they are justified by reasonable suspicion of a specific and articulable traffic offense, such as the lack of Commonwealth-issued license plates at issue here.  *See United States v. Hassan El*, 5 F.3d 726, 729–30 (4th Cir. 1993) (finding that a traffic stop "was justified and constitutional" because a traffic offense provided reasonable suspicion to stop the vehicle).  As discussed in Part III.B.2, *supra*, Mr. Hodges does not explain why this traffic stop was unjustified, other than making conclusory assertions to that effect.  (*See* ECF No. 5, at 6 ("I was . . . wrongfully stopped").)  Therefore, the Court concludes that the officers' conduct did not violate Mr. Hodges's right to be let alone.

Second, Mr. Hodges cites *United States v. Brown*, 731 F.2d 1491 (11th Cir. 1984), for the proposition that "you may refuse to provide the police [identification] or information."  (ECF No. 5, at 9.)  *Brown* is inapposite, as it concerned the refusal to provide *additional* identification "other than the [defendants'] airline tickets."  731 F.2d at 1494.  Also, although an individual is entitled to refuse to furnish identification during a *Terry* stop,[18] *see id.*, Virginia law requires that

---

[18] "A so-called *Terry* stop", identified in *Terry v. Ohio*, 392 U.S. 1 (1968), "allows a police officer whose observations lead [the officer] to suspect that a particular person has committed or is about to commit a crime to detain the person briefly in order to 'investigate the circumstances that provoke suspicion'", so long as the belief is based on specific and articulable facts.  *United States v. Johnson*, 599 F.3d 339, 345 (4th Cir. 2010) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975)).

19

operators of motor vehicles on Commonwealth roads provide their driver's licenses to law enforcement officers upon request. *See supra*, Part III.B.2.b; Va. Code § 46.2-104 (2023); *United States v. Branch*, 537 F.3d 328, 335 (4th Cir. 2008) (citations omitted). Thus, Mr. Hodges has not demonstrated that there is a clearly established right of motor vehicle operators to refuse to provide a driver's license to a law enforcement operator during a routine traffic stop.

Third, Mr. Hodges cites *Gainor v. Roberts*, 973 F.2d 1379 (8th Cir. 1992), whose inapplicability is described in Part III.B.2.d., *supra*.

Finally, Mr. Hodges cites two cases completely unrelated to the claims in the case before this Court.[19]

The officers did not violate Mr. Hodges's rights, but even if they had violated his rights, the unlawfulness of the officers' actions was not clearly established at the time of the incident. Accordingly, qualified immunity "requires the dismissal of [the] suit[]." *See Hulbert v. Pope*, 70 F.4th 726, 732 (4th Cir. 2023) (4th Cir. 2023) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

---

[19] First, Mr. Hodges cites *White v. Farrier*, 849 F.2d 322 (8th Cir. 1988), for the proposition that "giv[ing] the order for private property held in trust to be taken . . . is unconstitutional conduct". (ECF No. 5, at 9.) *White* concerned a transgender prisoner's complaint alleging cruel and unusual punishment in violation of the Eighth Amendment due to the prison's deliberate indifference to her serious medical need to address her gender dysphoria. 849 F.2d at 323, 325. The case has nothing to do with private property or takings law.

Second, Mr. Hodges cites *Arrington v. McDonald*, 808 F.2d 466 (6th Cir. 1988). (ECF No. 5, at 10.) *Arrington* found reversible error in a trial court's decision to permit the jury to determine whether the defendants were entitled to qualified immunity. 808 F.2d at 467. It is unclear why Mr. Hodges cited *Arrington* in the context of asserting a violation of his rights, when the issue is not before the jury.

C.   **Mr. Hodges Cannot State a Claim Under Any Other Federal Authority Cited in His Amended Complaint**

In his Amended Complaint, Mr. Hodges cites to numerous provisions from the United States Code—18 U.S.C. §§ 241–242 and 42 U.S.C. §§ 1983, 1985, and 1986—as well as the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.  (ECF No. 5, at 3.) Mr. Hodges's Section 1983 claims serve as the vehicle for his federal constitutional claims and are discussed in Part III.B., *supra*.  The remaining federal claims are addressed below.

1.   **As a Private Citizen, Mr. Hodges Cannot Bring an Action Under 18 U.S.C. §§ 241 and 242**

Regarding Mr. Hodges's claims under 18 U.S.C. §§ 241–242[20], "[g]enerally, a private citizen has no authority to initiate a federal criminal prosecution. . . .  Only the United States as

---

[20] Section 241 states, in pertinent part:

> If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any . . . Commonwealth . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

> If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured—

> They shall be fined under this title or imprisoned not more than ten years, or both[.]

18 U.S.C. § 241.

> Section 242 states, in pertinent part:

> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any . . . Commonwealth . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, . . . shall be fined under this title or imprisoned not more than one year, or both[.]

18 U.S.C. § 242.

21

prosecutor can bring a complaint under 18 U.S.C. §§ 241–242[.]" *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (citations omitted). Sections 241–242 are criminal statutes with no private right of action. This principle holds true in the Fourth Circuit as well:

> As the Fourth Circuit has recognized, "[u]nless there is clear Congressional intent to provide a civil remedy, a plaintiff cannot recover civil damages for an alleged violation of a criminal statute." *Tribble v. Reedy*, 888 F.2d 1387 (4th Cir. 1989) (unpublished) (citing with approval *Shaw v. McNeece*, 727 F.2d 947 (10th Cir.), *cert denied*, 466 U.S. 976 (1984) which held that causes of action based on § 241 were properly dismissed).

*Heyns v. U.S. Bank Nat'l Ass'n*, No. 1:18-CV-1429 (TSE), 2020 WL 2551796, at *4 (E.D. Va. Feb. 25, 2020) (dismissing plaintiff's claims based on §§ 241 and 242). Accordingly, the Court cannot recognize any of Mr. Hodges's purported civil claims arising under 18 U.S.C. §§ 241–42.

### 2.   Mr. Hodges Does Not Assert Conspiracy to Support an Action Under 42 U.S.C. §§ 1985 and 1986

Mr. Hodges fails to state a viable claim under 42 U.S.C. §§ 1985 and 1986. Mr. Hodges's complaint alleging "civil conspiracy to violate rights" appears to raise a claim under § 1985(3)[21]. (ECF No. 5, at 3.) Section 1985(3) provides a private cause of action where,

---

[21] Section 1985 states, in pertinent part:

**(3) Depriving persons of rights or privileges**

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985.

among other circumstances not relevant here, "two or more persons . . . conspire . . . for the

purpose of depriving . . . any person . . . of the equal protection of the laws, or of equal privileges

and immunities under the laws[.]"  42 U.S.C. § 1985.

As other courts have observed:

> The Fourth Circuit has held that "to prove a section 1985 'conspiracy,' a claimant
> must show an agreement or a 'meeting of the minds' by defendants to violate the
> claimants' constitutional rights." *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir.
> 1995).  "Because of the high threshold that a Plaintiff must meet to establish a
> prima facie case under section 1985, courts often grants motions of dismissal."
> *Davis v. Hudgins*, 896 F. Supp. 561, 571 (E.D. Va. 1995).  The Fourth Circuit has
> "specifically rejected section 1985 claims whenever the purported conspiracy is
> alleged in a merely conclusory manner, in the absence of concrete supporting
> facts." *Simmons*, 47 F.3d at 1377.

*Lewin v. Cooke*, 95 F. Supp. 2d 513, 525–26 (E.D. Va. 2000) (rejecting plaintiff's "general

conclusory allegations" of conspiracy due to a delay in responding to a request for discovery

production as "untenable").

At base, Mr. Hodges does not allege, even reading liberally, that there was an "agreement

or a 'meeting of the minds' by [D]efendants to violate [Mr. Hodges's] constitutional rights." *See

id.* (quoting *Simmons*, 47 F.3d at 1377).  Reading Mr. Hodges's Amended Complaint favorably,

he states that (1) Sergeant Richardson "gave the word wrongfully [to] confiscate [his] plates

without just compensation", (ECF No. 5, at 7); (2) Officer Hill and Sergeant Richardson, as

"acting employees for [HCPD]", still have [his] property . . . causing [him] financial harm",

(ECF No. 5, at 8); (3) Sergeant Richardson and Officer Hill "ha[ve] given the order for private

property held in trust to be taken", (ECF No. 5, at 9); and (4) "[t]he state along with its agents

[Officer] Hill, [Sergeant] Richardson, [and HCPD]" have no claim to his private property, (ECF

No. 5, at 10).  These allegations fail to meet the "'high threshold' . . . to establish a prima facie

case [of conspiracy to violate Mr. Hodges's civil rights] under section 1985[.]"  *See Davis*, 896

F. Supp. at 571. Because Mr. Hodges has only offered broad allegations that do not indicate any actual violation of his civil rights, nor the existence of a conspiracy, the Court will grant the Defendants' Motion to Dismiss as to the Section 1985 claim.

The Court's dismissal of Mr. Hodge's Section 1985 claim in turn requires the Court to dismiss Mr. Hodge's claim under 42 U.S.C. 1986.[22] Section 1986 "provides a cause of action against any party with knowledge of a conspiracy in violation of [S]ection 1985 who fails to take action [to] prevent the violation." *Davis*, 896 F. Supp. at 571. Any claim under Section 1986 requires a viable predicate claim under Section 1985. *Id.* ("[F]ailure on the Section 1985 claim also defeats the Section 1986 claim." (quoting *Burcher v. McCauley*, 871 F. Supp. 864, 869 n.4 (E.D. Va. 1994) (internal quotation marks omitted)). Because no viable Section 1985 claim exists, as discussed above, Mr. Hodges's Section 1986 claim must also fail. *See id.*

**D.    The Court Declines to Exercise Supplemental Jurisdiction over Mr. Hodges's State Law Claims**

In addition to the many federal law claims evaluated in Parts III.B. and III.C., *supra*, Mr. Hodges appears to assert a variety of state law claims, such as "BREACH OF TRUST[,] [misuse] of private property without consent, fraud, [i]dentity theft[,] [t]heft of Trust property[] . . . , [misuse] of the name MICHAEL PRINCE HODGES . . . , [f]raudulent contracting under

---

[22] Section 1986 states, in pertinent part:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured . . . for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case[.]

42 U.S.C. § 1986.

duress, identify theft" and "deprivation of rights according to the Virginia Constitution Article 1 section 16." (ECF No. 5, at 4, 6.)  For the reasons that follow, the Court declines to exercise supplemental jurisdiction over Mr. Hodges's remaining state law claims.

Section 1367(a) of Title 28 of the United States Code[23] provides that, if a federal district court has original jurisdiction over a claim in any civil action, it may exercise jurisdiction over state-law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "[S]upplemental jurisdiction is a discretionary doctrine and 'need not be exercised in every case in which it is found to exist.'" *Judson v. Bd. of Supervisors of Mathews Cnty., Va.*, 436 F. Supp. 3d 852, 869 (E.D. Va. 2020) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).  According to 28 U.S.C. 1367(c)[24], a district court "may decline to exercise supplemental jurisdiction over a claim under subsection

---

[23] 28 U.S.C. § 1367(a) states, in pertinent part:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. . . .

28 U.S.C. § 1367(a).

[24] Subsection (c) states, in pertinent part:

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
          *          *          *
               (3) the district court has dismissed all claims over which it has original jurisdiction[.]

28 U.S.C. § 1367(c).

25

(a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). In fact, the United States Supreme Court has confirmed that "[c]ertainly, if the federal claims are dismissed . . . , the state claims should be dismissed as well." *Gibbs*, 383 U.S. at 726; *see also Alexandria Resident Council, Inc. v. Alexandria Redevelopment & Housing Auth.*, 11 F. App'x 283, 287 (4th Cir. 2001) (modifying a district court judgment to reflect that the dismissal of state-law claims was without prejudice); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine— judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). In any event, "[i]t has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Gibbs*, 383 U.S. at 726.

Because the Court dismisses all of Mr. Hodges's federal claims—arising under 18 U.S.C. §§ 241 and 242[25]; 42 U.S.C. § 1983 and Amendments Four, Five, and Fourteen to the United States Constitution[26]; and 42 U.S.C. §§ 1985 and 1986[27]—and pursuant to the Supreme Court's guidance in *Gibbs* and *Carnegie-Mellon Univ.*, the Court declines to address Mr. Hodges's remaining state law claims. *See Judson*, 436 F. Supp. 3d at 869. Therefore, Defendants' Motion to Dismiss will be granted as to any state law claims that Mr. Hodges alleges, and those claims will be dismissed without prejudice.

---

[25] *See supra* Part III.C.1.

[26] *See supra* Part III.B.

[27] *See supra* Part III.C.2.

### IV.  Conclusion

For the foregoing reasons, the Court will grant the Defendant's Motion to Dismiss.  (ECF No. 14.)  Accordingly, Mr. Hodges's Amended Complaint, (ECF No. 5), will be dismissed without prejudice.

An appropriate Order shall issue.

Date: 02/16/2024
Richmond, Virginia

_____
M. Hannah Lauck
United States District Judge